**ROC–CENTURY ASSOCIATES**

v.

**Anthony J. GIUNTA, Personal
Representative of the Estate
of Stella Saltonstall.**

Supreme Judicial Court of Maine.

Argued May 5, 1995.

Decided Sept. 19, 1995.

Jon Haddow (orally), Mitchell & Stearns, Bangor, for Plaintiff.

Alexandra L. Treadway (orally), Verrill & Dana, Portland, for Defendant.

Before ROBERTS, GLASSMAN, CLIFFORD, RUDMAN and LIPEZ, JJ.

LIPEZ, Justice.

Anthony J. Giunta, Esq., personal representative of the estate of Stella Saltonstall, appeals from a judgment entered in the Hancock County Probate Court (*Paterson, J.*) in favor of ROC–Century Associates (ROC) for post-death interest on the debt evidenced by a promissory note of the decedent. ROC cross-appeals, challenging the rate of interest awarded by the court. We affirm the judgment.

ROC made a loan of $1,000,000 to Stella Saltonstall on December 30, 1986.[1] To evidence her debt, Saltonstall signed and delivered a promissory note to ROC. The terms of the note provided that it should be construed and enforced in accordance with the laws of New York. The note explicitly provided the rate of repayment on the note:

> Interest on this Note shall accrue from and after the date hereof at a rate equal to the Prime Rate plus five (5) percent (5%). For the purposes of this Note, the term "Prime Rate" shall mean the rate as announced from time to time by the Chase Manhattan Bank, N.A., as its prime rate. Interest shall be payable by the undersigned monthly commencing on February 1, 1987.

Saltonstall died in 1988 owing $909,017.83 in principal, plus accrued interest and late fees. After ROC's sale of the collateral, ROC brought an action to recover the balance of its loan. On appeal, we upheld the deficiency judgment rendered by the Probate Court in favor of ROC. *See ROC–Century Assocs. v. Giunta,* 658 A.2d 223 (Me.1995). During the pendency of that action, ROC brought the instant suit seeking post-death interest on its claim against the estate. Fol-

---

**1.** Additional facts relevant to this appeal have been fully set forth in *ROC–Century Assocs. v.* *Giunta,* 658 A.2d 223 (Me.1995).

lowing a hearing, the Probate Court found, pursuant to 18–A M.R.S.A. § 3–806(d) (1981), that ROC was entitled to post-death interest on its claim against the insolvent estate. The court further determined, according to New York law, that the rate of interest on the note would accrue at the Chase Manhattan prime rate plus 5% until entry of the deficiency judgment, and thereafter at the legal rate of interest in New York. This appeal and cross-appeal followed.

### Post–Death Interest

■ The personal representative argues that the Probate Court erred in its conclusion that 18–A M.R.S.A. § 3–806(d) (1981) allows post-death interest to accrue on an insolvent estate. We disagree.

18–A M.R.S.A. § 3–806(d) provides:

Unless otherwise provided in any judgment in another court entered against the personal representative, allowed claims bear interest at the legal rate for the period commencing 60 days after the time for original presentation of the claim has expired unless based on a contract making a provision for interest, in which case they bear interest in accordance with that provision.

This language makes no distinction between the treatment of interest running on a claim to a solvent estate and an insolvent estate. By contrast, the former statutes governing probate law explicitly provided special instructions for the treatment of insolvent estates. *See* 18 M.R.S.A. §§ 3001–3307 (1965), *repealed by* P.L.1979, ch. 540, § 24–C (effective Jan. 1, 1981). Interest on a claim against an insolvent estate was explicitly permitted from the date of death to the date of

allowance, unless otherwise provided by agreement of the parties. 18 M.R.S.A. § 3106 (1965).[2] When Maine revised its probate statutes in 1981 and adopted substantial portions of the Uniform Probate Act, the sections providing separate treatment for insolvent estates were repealed in their entirety, and replaced by a statutory scheme which makes no distinction between solvent and insolvent estates.[3] We discern from that change that the Legislature intended allowance and payments of claims against solvent or insolvent estates to be treated similarly.[4]

### Interest Rate

■ After establishing that ROC was entitled to collect post-death interest on the debt outstanding on the note, the Probate Court referred to New York law to establish the rate at which that interest would be paid. On cross-appeal, ROC complains that the court erred in its failure to apply the rate set by the terms of the note until the debt was satisfied.

The parties to the note agreed that New York law controlled the interpretation of its terms. It is well-settled New York law that when the parties contract for a particular rate of interest to accrue until the principal is paid in full, the contract rate of interest is applied until the principal is paid or the contract is merged into a judgment. Thereafter, interest is paid at the statutory rate. *O'Brien v. Young*, 95 N.Y. 428, 430 (1884); *European Am. Bank v. Peddlers Pond Holding Corp.*, 185 A.D.2d 805, 586 N.Y.S.2d 637 (1992); *Slutsky v. Blooming Grove Inn, Inc.*, 147 A.D.2d 208, 542 N.Y.S.2d 721, 724 (1989); *Stull v. Feld, Inc.*, 34 A.D.2d 655, 309 N.Y.S.2d 985, 987 (1970).

**2.** 18 M.R.S.A. § 3106 provided in pertinent part that "[i]interest shall be computed on claims allowed from the death of the debtor to the time of the commissioners' first report, unless the contract otherwise provides."

**3.** The former statutory scheme for decedents' estates and fiduciary relations contained a subpart dealing with the administration and settlement of decedents' estates, *see* 18 M.R.S.A. §§ 201–231 (1965), and another sub-part dealing with the administration and settlement of insolvent estates. *See* 18 M.R.S.A. §§ 401–413 (1965). The new statutory scheme, located at

Title 18–A, simply lumps the entire problem of administration of estates—whether solvent or insolvent—under one article, entitled "Probate of Wills and Administration." 18–A M.R.S.A. §§ 3–101—1201 (1981).

**4.** We are also not persuaded by the representative's proposition that 18–A M.R.S.A. §§ 3–805 & 3–815 (1981) should guide our interpretation of § 3–806(d). Those sections address the priority of payment on claims by creditors of an estate. Neither section addresses post-death interest accruing on a claim to an estate.

The representative argues that the note does not provide that interest will run until the principal is paid, and therefore, the statutory interest rate should accrue from the date the note matured. The plain language of the note, however, clearly provides for interest to accrue until the principal is fully paid:

> For value received, the undersigned promises to pay ... the principal sum of ONE MILLION DOLLARS ($1,000,000), plus interest from and after the date hereof on such portion of said principal balance as shall from time to time remain unpaid, at the rates and in the manner hereinafter set forth.

Therefore, the representative's argument must fail. *See Chadwick–BaRoss, Inc., v. T. Buck Constr., Inc.*, 627 A.2d 532, 534 (Me. 1993) (interpretation of an unambiguous contract is a question of law for the court).

By agreeing to be bound by New York law, ROC assented to the running of the statutory interest rate from the date the principal was paid in full or its contract with Saltonstall was merged into a judgment. We are unpersuaded by ROC's argument that because Saltonstall's death precluded its pursuit of a civil contract action, and limited its redress to the Probate Court, Maine's Probate Code, rather then the terms of its own agreement assenting to the application of New York law, controls the rate at which the interest should accrue. The foregoing principle of New York law has been applied to an action filed against an estate for payment on a promissory note, *Estate of Morrell*, 38 Misc.2d 518, 237 N.Y.S.2d 14, 16 (N.Y.Sur.Ct.1962). ROC has not directed our attention to any contrary authority under New York law.

The entry is:

Judgment affirmed.

All concurring.